IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMILL JENKINS, | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 15-277 |
| vs. | ) | Chief District Judge Joy Flowers Conti |
| | ) | Chief Magistrate Judge Maureen P. Kelly |
| Nurse SUSAN BERRIER; | ) | |
| SUPERINTENDENT BRIAN V. | ) | Re: ECF No. 34 |
| COLEMAN, | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

Plaintiff Jamill Jenkins ("Plaintiff") is an inmate in the custody of the Pennsylvania

Department of Corrections ("DOC"), and is currently incarcerated at the State Correctional

Institution ("SCI") at Fayette.  Plaintiff has brought this civil rights action against Defendants

Susan Berrier ("Berrier"), the Corrections Health Care Administrator ("CHCA") at SCI Fayette,

and Brian Coleman ("Coleman"), the Superintendent at SCI Fayette (collectively, "Defendants"),

alleging that Defendants were deliberately indifferent to his medical needs in violation of his

rights provided by the Eighth Amendment to the United States Constitution.[1]

Presently before the Court is a Motion for Summary Judgment submitted on behalf of

Defendants.  ECF No. 34.  For the reasons that follow, it is respectfully recommended that the

Motion be granted.

---

[1] Although Plaintiff has also alleged that his claims arise under the Fourteenth Amendment to the Constitution, it is well established that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 260 (3d Cir. 2010), *quoting* United States v. Lanier, 520 U.S. 259, 272 n.7 (1997).  Because Plaintiff's claims "fit squarely within the Eighth Amendment's prohibition on cruel and unusual punishment," his Fourteenth Amendment claim is foreclosed under the "more-specific-provision rule." Id. at 261.

## II.    REPORT

### A.    FACTUAL AND PROCEDURAL BACKGROUND

The following facts are not in dispute.  See ECF Nos. 36, 41.

Plaintiff presented to the infirmary at SCI Fayette on March 31, 2014, with sudden onset chest pain.  Id. ¶ 4.  After obtaining an abnormal EKG, the medical staff sent Plaintiff by ambulance to Uniontown Hospital.  Id.  Uniontown Hospital then transferred Plaintiff to University of Pittsburgh Medical Center ("UPMC") having become concerned about a possible aneurysm.  Id. ¶ 5.  Following an ultrasound at UPMC, however, the cardiologist felt there was no aneurysm or dissection and diagnosed Plaintiff with non ST elevation myocardial infarction ("NSTEMI"), high blood pressure and morbid obesity.[2]  Plaintiff was subsequently returned to SCI Fayette with instructions to make a follow-up appointment within two weeks.  Id. ¶ 6.  See ECF No. 37-2 at 3.

On April 5, 2014, upon Plaintiff's return to SCI Fayette from UPMC, Physician Assistant Darla Cowden reviewed Plaintiff's status and "per MD" ordered a follow-up "onsite."  ECF Nos. 36, 41 ¶¶ 7, 8.  See ECF No. 37-2 at 3.  On April 24, 2014, Plaintiff was seen by Dr. Paul Dascani, a licensed physician at SCI Fayette, and was found to be stable and doing well.  ECF Nos. 36, 41 ¶ 9.

Five days later, on April 29, 2014, Plaintiff was admitted to the infirmary at SCI Fayette for observation after complaining of migraines and throwing up blood.  Id. ¶ 10.  Plaintiff denied any chest pain and, after a few hours, was feeling much better and released back to his unit.  Id.

---

[2] Although Plaintiff disputes this diagnosis arguing he was, in fact, diagnosed with acute coronary syndrome, Plaintiff's discharge papers from UPMC indicate that the reason for Plaintiff's visit was "NON ST ELEVATION MI, CLOT."  ECF No. 37-2 at 3.  See ECF No. 42-5 at 2.  Moreover, the summary of acute coronary syndrome that was presumably provided to Plaintiff when he was discharged from UPMC shows that acute coronary syndrome "represents a range of conditions including: . . . [a] heart attack."  ECF No. 42-2 at 2.  Thus, the diagnoses appear to be consistent with one another.

¶ 11. Plaintiff was seen by Dr. Dascani in the HTN clinic again in May, but had no complaints related to his heart condition. Id. ¶ 12.

Plaintiff had no further chest or heart-related complaints or symptoms until August 13, 2014, when he reported burning in his chest and was sent to UPMC by ambulance. Id. ¶ 13. While at UPMC, Plaintiff was diagnosed with a pulmonary embolism and started on Coumadin. Id. ¶ 14. Plaintiff was discharged from UPMC on August 19, 2014, with the recommendation to follow-up with a hematology specialist. Id. ¶¶ 15, 16. See ECF No. 37-2 at 18. Upon his return to SCI Fayette, Plaintiff was housed in the infirmary until August 25, 2014, while clinicians adjusted medications to control his INR rate. ECF Nos. 36, 41 ¶ 15. Dr. M. Herbik, the Medical Director at SCI Fayette, arranged for Plaintiff to be seen by Hematologist Dr. Narinder Malhotra on October 7, 2014 and again on January 1, 2015. Dr. Malhotra found potential blood dyscrasias (thrombophilic syndrome – abnormal clotting factors in blood), which predisposes Plaintiff to embolisms. Id. ¶ 17. Plaintiff continues to be followed closely by the medical staff and has regular blood and lab studies performed, with appropriate adjustments to his Coumadin dosage. Id. ¶ 19.

Plaintiff nevertheless initiated this action on February 27, 2015. ECF No. 1. The Complaint was filed on April 16, 2015, wherein Plaintiff has brought a single claim against Defendants under the Eighth Amendment. ECF No. 5. Specifically, Plaintiff claims that Defendants were deliberately indifferent to his medical needs by failing to ensure that he was scheduled for a follow-up appointment at UPMC where he had been taken and treated in April of 2014. Plaintiff alleges that Defendants' failure to do so resulted in the development of the blood clot in his chest requiring him to be hospitalized again in August of 2014.

Defendants filed an Answer to the Complaint on July 1, 2015, and submitted the instant

Motion for Summary Judgment on January 7, 2016.  ECF Nos. 15, 34, respectively.  Plaintiff

filed a Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment on

February 9, 2016.  The Motion therefore is ripe for review.

**B.      STANDARD OF REVIEW**

Rule 56 of the Federal Rules of Civil Procedure provides that: "The court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of

material fact is in genuine dispute if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

See Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) ("[a] genuine issue is

present when a reasonable trier of fact, viewing all of the record evidence, could rationally find

in favor of the non-moving party in light of his burden of proof").  Thus, summary judgment is

warranted where, "after adequate time for discovery and upon motion . . . a party . . . fails to

make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial."  Marten v. Godwin, 499 F.3d 290,

295 (3d Cir. 2007), *quoting* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of demonstrating to the court that there is an

absence of evidence to support the non-moving party's case.  Celotex Corp. v. Catrett, 477 U.S.

317, 322 (1986).  See Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir.

2004).  "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do

more than simply show that there is some metaphysical doubt as to the material facts . . . . Where

the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,

there is no genuine issue for trial." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007), *quoting* <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts in favor of the nonmoving party. <u>Matreale v. New Jersey Dep't of Military & Veterans Affairs</u>, 487 F.3d 150, 152 (3d Cir. 2007); <u>Woodside v. Sch. Dist. of Phila. Bd. of Educ.</u>, 248 F.3d 129, 130 (3d Cir. 2001).

## C.    DISCUSSION

Plaintiff has brought his claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws. It does not, by its own terms, create substantive rights." <u>Kaucher v. Cnty. of Bucks</u>, 455 F.3d 418, 423 (3d Cir. 2006), *citing* <u>Baker v. McCollan</u>, 443 U.S. 137, 145 n. 3 (1979) (footnote omitted). Thus, in order to state a claim for relief under Section 1983, the plaintiff must allege facts from which it could be inferred that "the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." <u>Id.</u> at 423. As previously discussed, Plaintiff has alleged that Defendants deprived him of his rights provided by the Eighth Amendment.

The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide basic medical treatment to those whom it has incarcerated and that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). Thus, in order to establish an Eighth Amendment violation, a plaintiff must demonstrate: (1) a serious medical need; and (2) that the defendants were deliberately indifferent to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004).

In order to establish deliberate indifference, a "plaintiff must make an 'objective' showing that the deprivation was 'sufficiently serious,' or that the result of defendant's denial was sufficiently serious. Additionally, a plaintiff must make a 'subjective' showing that defendant acted with a 'sufficiently culpable state of mind.'" Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002), *citing* Wilson v. Seiter, 501 U.S. 294, 298 (1991). Deliberate indifference exists "where [a] prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse v. Plantier, 182 F.3d at 197. Moreover, the Court of Appeals for the Third Circuit has held that prison officials who are not physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993). See Spruill v. Gillis, 372 F.3d at 236 ("[a]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a

non-medical prison official [ ] will not be chargeable with the Eighth Amendment *scienter* requirement of deliberate indifference").

Further, it is well established that an inmate does not have a constitutional right to see a doctor on demand or the doctor of his choice. <u>McNeil v. Redman</u>, 21 F. Supp. 2d 884, 887 (C.D. Ill. 1998) (an inmate has no constitutional right to see a doctor on demand). <u>See</u> <u>Maqbool v. Univ. Hosp. of Med. & Dentistry of N.J.</u>, No. 11-4592, 2012 WL 2374689, at *9 (D.N.J. June 13, 2012). Nor is an inmate entitled to a particular course of treatment or to have particular tests performed. <u>Jetter v. Beard</u>, 130 F. App'x 523, 526 (3d Cir. 2005) (noting that while plaintiff would have preferred a different course of treatment, his preference does not establish an Eighth Amendment cause of action). Rather, "the decision whether to summon a doctor, like the question of whether certain diagnostic technique or form of treatment should be prescribed, 'is a classic example of a matter for medical judgment,'" and does not give rise to an Eighth Amendment violation. <u>McNeil v. Redman</u>, 21 F. Supp. 2d at 887, *quoting* <u>Estelle v. Gamble</u>, 429 U.S. at 107. <u>See</u> <u>Banks v. Cnty. of Allegheny</u>, 568 F. Supp. 2d 579, 595-96 (W.D. Pa. 2008), *quoting* <u>White v. Napoleon</u>, 897 F.2d 103, 110 (3d Cir. 1990) ("the mere allegation of an opinion difference between a patient and a clinician, or between two medical professionals, does not amount to 'deliberate indifference to a serious medical need'").

In the instant case, the record shows that after Plaintiff presented to the SCI Fayette infirmary on March 31, 2014, with sudden onset chest pain and an abnormal EKG, the medical staff sent him via ambulance to Uniontown Hospital which, in turn, transferred Plaintiff to UPMC having become concerned about a possible aneurysm. Plaintiff was released from UPMC on April 5, 2014, with instructions to have a follow-up visit in two weeks. Upon his return to SCI Fayette, Physician Assistant Cowden reviewed Plaintiff's status and ordered a follow-up "on

7

site" in two weeks as per doctor's orders. See ECF No. 37-2 at 3. Plaintiff was seen by Dr.

Dascani, a licensed physician at SCI Fayette, on April 24, 2014, just over two weeks after he was

discharged from UPMC, and was found to be stable and doing well.

Thus, contrary to Plaintiff's assertion, a follow-up visit was not only scheduled but

Plaintiff had a follow-up visit as ordered with Dr. Dascani. The fact that Plaintiff was not seen

by the doctor of his choice, or at the facility of his choice, does not negate the fact that Plaintiff

had a follow-up visit as ordered and was found to be stable and doing well. Thus, the premise

upon which Plaintiff bases his claims of deliberate indifference against Defendants is belied by

the record.[3] It necessarily follows that Berrier and Coleman cannot be found to have been

deliberately indifferent to Plaintiff's medical needs. See Durmer v. O'Carroll, 991 F.2d at 68;

Spruill v. Gillis, 372 F.3d at 236.[4]

Although irrelevant to Plaintiff's specific claim faulting Defendants for failing to ensure

that Plaintiff was scheduled for a follow-up visit at UPMC in April of 2014, the record also

reflects that on April 29, 2014, five days after Plaintiff was seen by Dr. Dascani, Plaintiff was

admitted to the SCI Fayette infirmary for observation after complaining of migraines and

throwing up blood. Plaintiff denied any chest pain, and after a few hours was feeling much

better and released back to his unit. He was nevertheless seen again by Dr. Dascani in the HTN

clinic in May, but had no complaints related to his heart condition. In fact, plaintiff had no

---

[3] Moreover, Plaintiff has advanced no argument, and provided no evidence, to suggest that a UPMC doctor would have found differently. Indeed, Plaintiff does not contend (nor provide evidence) that Dr. Dascani's findings were incorrect or that Plaintiff was not stable and doing well at the time.

[4] Defendants have represented that Berrier, as the CHCA, does not, and cannot, make medical judgments or decisions with respect to an inmate's course of treatment, which includes decisions regarding outside consultations and scheduling those appointments when deemed necessary as those decisions are clinical in nature and involve medical judgment. See ECF No. 36 ¶¶ 20-23. Plaintiff denies that these assertions are accurate citing to what purports to be a statement of the CHCA's job responsibilities. ECF No. 42-1 at 2-4; ECF No. 42-7 at 2-4. While the position certainly involves overseeing the health care program and the health care providers at SCI Fayette, the CHCA's duties are purely administrative in nature and do not include making clinical judgments or decisions regarding the course of treatment. Id. As such, Berrier cannot be considered a medical provider or member of the clinical staff responsible for Plaintiff's treatment. See ECF No. 37-1 at 2-6.

further chest or heart-related complaints or symptoms until August 13, 2014, when he reported

burning in his chest and was again sent to UPMC by ambulance where he was diagnosed with a

pulmonary embolism and started on Coumadin.  Since then, Plaintiff was seen on several

occasions by Hematologist Dr. Malhotra as recommended and, by Plaintiff's own admission,

continues to be "followed closely" by the medical staff and has regular blood and lab studies

performed, with appropriate adjustments to his Coumadin dosage.  ECF No. 36, 41 ¶ 19.  Based

on this record, no reasonable fact finder could conclude that Plaintiff was not being treated for

his heart condition or that he was being mistreated in anyway.

In addition, as argued by Defendants, "[a] defendant in a civil rights action must have

personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a

constitutional violation which he or she neither participated in nor approved."  Baraka v.

McGreevey, 481 F.3d 187, 210 (3d Cir. 2007).  Personal involvement in the alleged wrongdoing

may be shown "through allegations of personal direction or of actual knowledge and

acquiescence."  Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005), *quoting* Rode v.

Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  See Ruff v. Health Care Adm'r, 441 F.

App'x 843, 846 (3d Cir. 2011) (per curiam) ("[t]o be liable under § 1983, a defendant must have

some personal involvement in the underlying unconstitutional conduct").

It is also well established that the filing of a grievance is not sufficient to show the actual

knowledge necessary for a defendant to be found personally involved in the alleged unlawful

conduct.  Rode v. Dellarciprete, 845 F.2d at 1207.  See Ramos v. Pa. Dep't of Corr., No. 06-

1444, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) ("review and denial of the grievances

and subsequent administrative appeal conducted does not establish personal involvement by

those Defendants in the alleged underlying unconstitutional conduct"); Jefferson v. Wolfe, No. 1:

04-44, 2006 WL 1947721, at *17 (W.D. Pa. July 11, 2006) (finding that allegations that the defendants denied the plaintiff's appeal of his grievance was insufficient to establish the defendant's personal involvement in the challenged conduct).

In this case, Plaintiff first complained about the failure to schedule him for a follow-up appointment at UPMC following his hospitalization in April of 2014, in a grievance he filed in September of 2014, which Berrier denied at the first level of review as untimely and Coleman upheld on appeal. ECF No. 37-2 at 37-40. Because review and denial of a grievance cannot provide the basis for finding personal involvement in the alleged constitutional violation, Plaintiff is unable to succeed on his Eighth Amendment claim on this basis as well.

D.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Motion for Summary Judgment submitted on behalf of Defendants Berrier and Coleman, ECF No. 34, be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,


/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

Dated: July 27, 2015


cc:     The Honorable Joy Flowers Conti
        Chief United States District Judge

        Jamill Jenkins
        KA9362
        SCI Fayette
        Box 9999
        LaBelle, PA 15450-0999

        All counsel of record via CM/ECF